Thank you, Your Honor. Good morning, and may it please the Court. My name is Joseph Gratz, and I represent the appellants Tony Kornrumpf and his very small business, Hoops Enterprise. Tony Kornrumpf bought genuine copies of Adobe software. When he bought them, he owned them. And because he owned them, he did not infringe copyright by reselling them on eBay. I'm sorry, Your Honor? What is it that he owned? What is it that he owned, Your Honor? What he owned, Your Honor, is the physical copy, the disk on which the computer program is recorded. The question under the first sale doctrine is, who is the owner of the material object? The disk with the electronic material on it, or just the disk? There is no difference, Your Honor, between the disk with the electronic material on it and the disk itself. They are the same object. The disk has the electronic material on it. He owned the electronic material in the sense that he could put it on a computer. I'm sorry, Your Honor. I'm having trouble hearing you. He owned the electronic material in the sense that he could put it on a computer and use it. That's right, Your Honor. I'm sorry. I'm having difficulty hearing the question. Did he own the electronic material in the sense that he could put it on the computer and use it, or authorize someone else to? Well, the question you're asking, Your Honor, is about what would be permissible under copyright law. And the question of what would be permissible under copyright law is a different one than who owns the copy. And, Your Honor, because he was the owner of the copy, yes, under various other sections of the Copyright Act, I think he did have the right to put it on his computer and use it, although the record reflects that neither Mr. Kornrumpf nor anyone else with respect to these particular copies had ever installed and used them. Does that answer Your Honor's question? Yes. I have a related question. And you start out by emphasizing the disk. I think you use it substantially in your briefing to this Court. What you told the district court was the contracts obtained through discovery show that Adobe sells copies of its software products to the OEM companies. Nowhere in your summary judgment opposition do you ever use the word disk or diskette. So are you shifting the focus from the content to the physical manifestation of the disk that the consumer gets when they open the package of the Dell computers and making any kind of distinction between that? No, Your Honor. There is not a difference between the argument that Your Honor recited from the briefs below and the argument that we are making here with respect to what it is that is in question as to copyright. Then what difference does it make in terms of what you argued to the district court, whether we call it a disk or we call it a copy of the software product? Are you drawing a distinction? So those two things... Yes or no? Are you drawing a distinction between the two? There is not a difference, Your Honor, no, between the copy... So it doesn't make any difference whether it's a disk or it's the copy of the software. What you argued to the district court was copy of the software, and when you say disk, we should understand it in those terms so that when we're reviewing the analysis of the district court, we can assume you're not changing any argument. You're making the same argument that you made below, the same claim and effect, the same focus is on what's inside the disk. The focus, Your Honor, that's right, is on the copy, and the copy, both below and here, as it's defined in Section 101 of the Copyright Act, is the disk. And did you ever make that specific argument to the district court? Well, Your Honor, we did not use the word... Yes or no? We did not use the word disk, Your Honor. So why are you drawing such a distinction to us? So the reason, Your Honor, that we are using, I think, the clearer term disk rather than copy is precisely because of the confusion that Your Honor is pointing out. A copy under the Copyright Act is a physical object. It is a disk. And when it came time below for us to put in a picture of what the copy is that we're talking about, we put in a picture of the physical disk. That is the copy under Section 101 of the Copyright Act. They are one and the same. But at points in your brief, you then seem to say that there's, as to the putting of the material on the disk on a computer, that you recognize that that is a license. I find it very difficult. The lines that are being drawn are rather minuscule. Certainly, Your Honor. Yes, under many circumstances, under copyright law, one would need some permission or license in order to install software on a computer because that is the making of a new copy of the software. So if you're selling a disk to somebody, you're selling them essentially nothing. I mean, you're selling them a piece of plastic which they could put something else on, but that's all you're selling. We are not, Your Honor, just selling them an expensive and ineffective doorstop, which I think is Your Honor's question. No, for two reasons. The first reason is that because they are the owner of a copy under Section 117 of the Copyright Act, they have certain rights to make essential step copies, copies that are necessary to run the software, because they are an owner. Unless they get accepted as a licensee. Well, if they are, because they are an owner, Your Honor, they can run it without a license. And that's what Section 117 of the Copyright Act says. Alternately, Your Honor. But wait a minute. Go ahead. I thought your brief was split at that point and said once they put it on the computer and use it, they are a licensee. Well, that's in this particular case, Your Honor, stepping out of sort of what's generally true of computer programs and into the facts of this case. These particular computer programs, in order to install them, require the user to agree to a contract directly with Adobe. And that contract directly with Adobe, that end user license agreement, has certain restrictions and gives them certain rights beyond what copyright law at its base allows owners to do. For example, to install it on more than one computer at once. And if they want to do that, they need to agree to Adobe's end user license agreement and form that contract to come in privity of contract with Adobe. If they don't want to do that, for example, if they are merely someone who is not a user of software like Mr. Kornrump, they don't need to enter into privity of contract with Adobe and they don't need to do that. They also don't need to agree to that if they, you know, want to simply exercise their rights under Section 117 as an owner. To the extent that's possible with this particular program. In part of the analysis that we should review under, we're guided and controlled by the Verner decision? Your Honor, yes. The Verner decision is a decision of this Court that I agree with you is binding on this panel. In fact, you urge the district court to apply that test. That's right, Your Honor. We urge the district court to look to Verner because Verner was the controlling standard. And we told the district court, as we're telling this court, why we think Verner is distinguished. Verner announces a narrow rule that is the exception to the general rule that when you give something to someone and you never expect to get it back, that now they own it. That's the general rule and Verner announces a narrow exception to that. Which relates to users of software programs under certain circumstances. And then you argued to the district court that because the first sale occurs between plaintiff and the various OEM companies, the subsequent sales of these same copies of plaintiff software products by defendants are protected by the first sale doctrine.  That's correct, Your Honor. Okay. So the first sale occurs when the plaintiff and the various OEM companies have a transaction. Is that it? That is a place where a sale occurs, yes, Your Honor. All right. So what is a sale of? So what it is a sale of is the physical object. The physical object at that point is a master disk. It's not the disks you're talking about. Well, Your Honor raises an interesting point, which is that Adobe itself never actually owns or touches the disks that are in question here. They're manufactured by a third-party pressing plant and Dell purchases them from that pressing plant. So Your Honor is correct that the disks that are received are received with Adobe's authorization from the pressing plant rather than from Adobe itself. And Adobe never touches or owns those disks. But those disks are owned by — go ahead, Your Honor. The disks are not sold independently of the bundle. Correct? Dell and HP do not distribute the disks in any form independently of hardware. Right. So the sale is of the bundle, not of the disks. Wouldn't you agree? The sale is of the bundle, Your Honor. That's right. When you go to the store and buy an HP printer and you take home a box, you own everything in that box. In terms of the first sale doctrine, there really has been no sale of the disk, has there? There certainly has, Your Honor. There's been — go ahead, Your Honor. There's a sale of the bundle, which includes the package. And certainly you would expect under the first sale doctrine to have the right to resell the computer and the bundle. Right? In your view. You certainly can resell the computer, Your Honor. That's right. So tell me why you think that we can — unbundling what has been sold as a package constitutes an independent sale. Because when I buy a package of three pens at the store, Your Honor, and I give one of those pens to my friend, I owned all three pens. And there's nothing about that transaction that means that I can't separate out the things that I buy in a package, such that I'm not the owner of all of the things in that package. There isn't a difference, Your Honor, between owning the bundle, that is, owning the printer you're taking home from the store along with everything in the box, and owning each of the individual items in the box. And the question, Your Honor, under the first sale doctrine is solely whether — whether the person who takes home the printer from the store owns the disk that's in the box. You're down to about 3 minutes 30. Do you want to reserve? Yes, Your Honor. Thank you. And please, the Court. My name is Andrew Coombs. I'm counsel for Adobe. I'm here with Annie Wang of my office. Could you adjust the mic a little bit? I'm sorry. Is that better? Yeah, it is. Thank you. The question before this Court is very important and very important to the software industry, but, frankly, not that difficult to resolve, given the binding authority of this Court in Verner that's been applied in cases since Verner, including Apple v. Sistar. Can we start with this? The statute says that the copy is the physical manifestation, right? Okay. Adobe actually only sells a master disk. It never actually sells disks. Is that right to anybody? Adobe is selling code. Right. The disk is like the packaging in the pen example. The disk has no value without the code on it. So how is it that anything that you're selling is covered by the first sale doctrine at all? Because you're not – the copies are the material objects. You are not – the material objects we're talking about here are individual disks that go to consumers. You never own them. You never sold them. Is that right? Adobe never did. Adobe owns the software code embedded on those disks. All right. So is your position that you're just not covered by the first sale doctrine at all? Because you're not just selling – you're not selling the disks that are in question here? It's not you? If somebody is, Dell and HP are, but you're not. We are contending that Adobe is not covered by the first sale defense as to the distribution model that was employed by it with respect to its OEMs. I'm not sure you're doing either under the copies – under the definition of copies. The code is licensed to Dell and to HP and other OEM distributors. But the code is not covered by the – it's not a copy and isn't covered by the exception. This Court has already addressed this question in Apple v. Scistar, where it said that the Mac OS software, when sold as retail package DVD-containing software, enabled Adobe – I'm sorry, Apple's existing customers to upgrade to the latest version of the operating system. The buyers of that DVD purchased the disk. They knew, however, they were not buying the software. Apple's licensing agreement clearly explained that. I'm trying to say something a little different. Because you never owned – you never sold these disks at all to these people. We licensed – I'm sorry, Adobe licensed others to make those disks and then – and others still to distribute them with software. And there was a restriction on those licenses that required that distribution to be with specified hardware. So the exhibit that was put in evidence of the disk, which I think most people are familiar with getting if you buy something, you have the option of uploading it to your computer or printer. Then that disk was actually – the plastic material object was manufactured by either Dell or HP in this case. Or pursuant to license. All pursuant to license. All pursuant, as you contend, to a license. Correct, Your Honor. And Adobe in its transaction with those two entities, those OEM entities, if you will, does Adobe get money in exchange for that? Yes, Your Honor. There's a royalty system in place. And this characterizes a royalty for exploiting the license. This is correct, Your Honor. And you contend that's not a sale because it's a license? That's correct, Your Honor. All right. As a result, we believe that the decision in Verner controls the decision in this case as was found by the district court. It satisfies the three elements of the Verner test. And it satisfies it as to the distribution agreement, not the EULA. The unusual fact situation in Verner led this court to use the term user. However, it also used the term customer. And in the context of Adobe's distribution model, its customers are Adobe – I'm sorry, are Dell and HP in this example. And as a result, the Verner factor should be applied as against those license agreements. Those license agreements in their material respect are the same as the distribution and use restrictions that were found sufficient in Verner and later in the Applebee's iStar case to determine that these were licenses and not sales. And therefore, the further distribution in violation of those restrictions was not eligible for the first sale defense. I asked counsel when he was standing where you are questions about the disk and his focus on the disk. Was there anything in his response that was new that wasn't presented to the district court? In concerning the disk versus software example? The distinction between the disk and the code? I think Your Honor was correct that the argument in the district court discussed the – argued it in terms of the product being the software. Well, the statute is whatever the statute is. And as far as the statute is concerned, it has to be the disk because otherwise there's no first sale doctrine applicable at all. So, I mean, it may have been an awful language, but it's the disk with the software on it because that's what the statute's about. I think Your Honor was correct in your questioning of counsel for the defendants here to point out, though, that to speak of the disk is a fallacy. The disk is a doorstop. Well, that may be, but that's a different question from whether there was something waived here. Again, I guess I come back to the decisions of Apple and Verner, which have reduced the emphasis on possession of the physical copy. Possession was a standard under the Copyright Act before 1976. I mean, it can't reduce it because that's what the statute's about. So language may be confusing, but it ultimately has to come back to the statute because that's what it's interpreting. But it's ownership of the copyrighted work. The physical disk is nothing without the copyrighted work, and that copyrighted work was clearly licensed, not sold. And the district court's decision in that respect clearly should stand. I have some questions about Verner. The whole first sale doctrine, in its origin, is a restriction on being able to restrict transfer, right? So I don't go back to the case about the book with the $1. And so to say that if you restrict transfer, that makes it into a license, when the whole point here is that you can't, if you meet whatever the qualification is, you can't restrict transfer, seems totally circular. And it seems to me that piece has to back out, as does the language question. And essentially, in Verner, we're into the, it's the third criteria, the use of the word, the use of the word, the use of the word.  It's a question of a list of restrictions that have to govern everything. Is that wrong? Well, there's two things, I think, Your Honor. The first is that Bob's Merrill, factually, is more like the Augusto case than like the Verner case, because there was a set. In Augusto, there was an unsolicited distribution of promotional music property, not based on any prior relationship with the recipient of the disk. That's clearly not the case here. This is much more like the Verner case, where you have a structured distribution relationship with the OEM partners, with sub-distributors, and then, finally, with end users. But you said to someone, okay, here's a banana. I mean, it's not uncovered, but whatever it is. And you can give me $10 for it, but you can't sell it to someone else. We know that that's you can't, if this is a copyrighted copy, you cannot enforce the transfer restriction. Your Honor, I'm hurt to rent a car. I will rent a car and not sell it. The person who gets the rental car cannot turn around and sell the rental car. Well, I understand that. But what I'm saying, it's not the fact that you can't sell it that makes it not a sale. For sale purposes, it can't be, because that's the whole point of the first sale doctrine, is to say you can't have that restriction if the other criteria are met. Your Honor, there's a bargain been made with the consuming public, pursuant to which they obtain tremendous benefits from the licensing relationship that's created by the structure that Adobe's created here. And that does not mean there can't be a sale. There are full-version retail that are not sold only bundled. There are non-educational discount software that also are not subject to those kinds of restrictions. When you sell these full-version retails, those are sales, even though the same softwares are subject to the same restrictions in terms of licensing? I can't tell you as I stand here whether there are no restrictions on licensing, but there are not the same restrictions on redistribution. But otherwise there are, right? Aren't the other restrictions or the other characteristics, i.e., the availability of upgrades and the availability of help systems and so on, all essentially the same? In some of those software scenarios, and again, I can't speak to the specific ones for Adobe because they're not an issue in this case, but there can be situations where an end user can transfer their license to another end user. They obviously have been committed to eliminating the copies on their system. They're no longer eligible for the support and the upgrades because that will have been transferred with the license to a new end user. But there is an ability to buy a copy in that sense and then to transfer that copy to someone else. But the product that we're talking about here was sought out by the defendant because it's cheaper.  And so there is an ambiguity between the product that Adobe was distributing through this model. But the Supreme Court just said it isn't the point of copyright. Well, they said that in connection with resolving an ambiguity between the first sale defense and the imprecation right. There is no ambiguity. Well, I said it. It said it in general, and it's obviously true that the copyright law is not about allowing you to divide markets. Your Honor, it said it in connection with interpreting an ambiguity. It was discussing a presumption of statutory interpretation, and that doesn't apply here because the statute in Congress has said that we are to make a distinction between copies that have been sold and copies that have not been sold, which includes copies such as these that have been licensed. Finally, Your Honor, the defendants have argued that the Kurtzain decision dictates a different result here. And that clearly is not the case. We've been talking about the statutory presumptions, but a key consideration there is that the fact of a sale was admitted by the copyright owner in that case. They were not required to make the determination that is the subject of the analysis in Verner and this case, which is whether or not a sale in fact occurred. Unless the Court has any further questions, I'm prepared to rest. Thank you. Thank you, counsel. Do we have a rebuttal? A couple of quick points, Your Honor. The first is the sale. There were a number of questions about and some discussion about what the sale is here and whether there can be a sale given that the disks never passed through Adobe's hands, whether Adobe can be said to have sold them for purposes of the first sale doctrine. And the answer is yes. Why? Because the first sale doctrine does not require a literal sale from the hands of the copyright holder. It only requires any disposition with the authorization of the copyright holder. And one place we can see that is in the Augusto case where the copies were shipped from some printing plant, and they were not in fact sold. In fact, they were given away. That was one of the issues in the Augusto case. But because the disposition of the copies by Dell and HP was with the authorization of the – Nobody paid for them. But in terms of who owned the physical manifestation, it was the person who was being – the plaintiff in the case, right? It may have been shipped from somewhere else, but they owned the physical manifestation. That's correct, Your Honor. But that's not true here. Well, it is, Your Honor. Well, it's not true that they necessarily had possession of the physical manifestation. Or ownership of it either. They had – in fact, they didn't make the copies. They didn't own the plastic. They didn't have – all they did was license the software. So the question, Your Honor, is there – a copy comes into being, right? A disk is pressed at a pressing plant. At that moment, someone is the owner of that copy, right? It can't be that no one owns that copy. They were the owner of the disk, the master disk. They transferred that by some – whether you call it a license or a sale or whatever you call it, to Dell and HP. And Dell and HP now own one copy – one copy. And they – the software on which is licensed to them with the permission to make other copies. And the question, Your Honor, is not who owns that master copy. But when the pressing plants that are pressing the disks that are to go in the HP printer boxes are pressing those disks, the question for the – one question for the court to consider is when those pressing – the disks roll off the assembly line, who owns them right then? You know, the argument you're making now is awfully close to the one we rejected in Systar. How do you distinguish that case? The argument – There was the same argument. You sent the disks to us. Therefore, we can – we purchased the computer. We can use the disk for whatever purpose. First sale doctrine allows us to do that. And we said no. Well, and the facts in Systar were on all fours with the facts in Verner in a way that the facts here are not. The Systar case involved people who had agreed to and were bound by an end-user license agreement. And that agreement they made restricted what they could do and gave up some rights that they may otherwise have had. Your time has expired. Any further questions from the panel? Okay. Thank you very much for your arguments. Thank you. Interesting case. It will be submitted for decision.
judges: Thomas, Fisher, Berzon